## MEYER vs. PECK.

As between the parties, a bill of lading is a mere *receipt*, and so far as respects the condition and quality of the goods shipped, is open to explanation by parol evidence.

In an action against one who is both shipper and consignee of goods, for freight, it is a question of fact for the jury whether the carrier delivered all the property received by him.  If he did deliver all he in fact received, although less than the amount admitted in the bill of lading, he is entitled to recover for the freight of the whole quantity delivered; without any abatement on account of the deficiency.

APPEAL by the defendant from a judgment entered upon the verdict of a jury, after a trial at the circuit.  The action was brought by the assignee of a bill of lading, to recover freight upon a cargo of wheat transported from Buffalo to Rochester.  The following facts were established by the evidence : The defendant purchased of one A. W. Horton, at Buffalo, a cargo of wheat, in bulk, to be delivered on board of a canal boat.  Horton gave Capt. Pettis, the plaintiff's assignor, an order for the wheat, and it was delivered to him at Hatch's elevator, by weight.  Pettis stood by the

delivery, and saw all the wheat weighed into the boat. At the time of delivery he executed two bills of lading, one of which he retained, the other was sent forward to the defendant Peck, the consignee. In these bills the quantity of wheat specified was 5589 bushels. Horton then made his draft upon Peck for the amount, which was presented the next day after the bill of lading arrived, and was paid upon the faith of the bill of lading, before the wheat arrived. It is customary to pay such drafts without waiting for the arrival of the boat. Millers have no other evidence of the amount shipped, than the bill of lading. Upon delivery at Rochester, the wheat fell short 124¼ bushels, worth $1 per bushel. The captain took no measures to ascertain how the loss occurred. The consignee availed himself of the provisions of his bill of lading, and deducted the deficiency from the balance of freight ($101.50) due the captain. The parties subsequently went to Buffalo to the elevator, and found the tally of weights all right. It is the custom among millers and boatmen at Rochester, without any writing, if wheat falls short, to deduct the deficiency from the freight due, if it overruns, the captain demands, and is paid for the excess. Pettis assigned his claim to the plaintiff. The court was requested to charge that this bill of lading was, as respects quantity, a contract and not a mere receipt open to explanation, which the court refused. That if the jury believed the draft was paid upon the faith of the bill of lading, then the plaintiff was estopped from showing any deficiency. This the court refused, giving as one reason that upon the facts the draft was not paid upon the faith of the bill of lading. The court charged the jury that the bill of lading was not conclusive, but was merely evidence to raise a presumption; and that the plaintiff was at liberty to show that the quantity admitted to have been received was not received. And if the jury should find that such was the fact, and that the plaintiff's assignor delivered at Rochester all the wheat in fact received, although less than the amount admitted in the bill of lading,

the plaintiff was entitled to recover. The jury found a verdict in favor of the plaintiff for $95.88.

*C. H. Clark,* for the appellant.

*J. C. Cochrane,* for the plaintiff.

*By the Court,* E. DARWIN SMITH, J. The exception taken by the defendant's counsel to the refusal of the circuit judge to grant the motion for a nonsuit, in this case, I think is not well taken. It appeared, when that motion was made, that the witness Pettis, the plaintiff's assignor, had received of the defendant's agent at Buffalo a quantity of wheat for transportation to Rochester consigned to the defendant. That he signed a bill of lading, in which the wheat is represented as consisting of 5589 bushels. The plaintiff gave evidence tending to prove that all the wheat received by Pettis was in fact delivered, although it appeared that there was a discrepancy of 124 bushels between the quantity specified in the bill of lading and the quantity actually delivered to the defendant at Rochester. As between the parties, a bill of lading is a mere *receipt,* and so far as respects the condition and quantity of the goods shipped, is open to explanation by parol evidence. (*Wolfe* v. *Myers,* 3 *Sandf.* 7. *Bates* v. *Todd,* 1 *Moody & Rob.* 106. *Abbott on Shipping,* 324. *Ellis* v. *Willard,* 5 *Seld.* 529.) The defendant was both shipper and consignee. It was therefore a question for the jury, upon the evidence given, whether Pettis delivered all the wheat he received. If he did, the plaintiff was entitled to recover for the freight of the whole quantity delivered, and the defendant was not entitled to retain the value of the 124 bushels not received by him. The motion for a nonsuit was therefore properly denied. Several exceptions were taken to the charge and the refusal of the judge to charge as requested. The judge was requested to charge that the bill of lading was conclusive as to the quantity of wheat mentioned in it, and

the defendant was entitled to recoup the value of the deficiency as against any claim for freight. The judge refused so to charge, and on the contrary charged that the bill of lading was not conclusive, but was merely evidence to raise a presumption, which must be overcome by the plaintiff. The exception to the charge and the refusal to charge in this particular present the same question raised on the motion for a nonsuit, and are not well taken if the relation of the parties remained unchanged by the proof given in the further progress of the trial. The complaint states that A. W. Horton, the duly authorized agent of the defendant, shipped upon the canal boat C. Barnes, of which C. Pettis was master, the cargo of wheat in question. This allegation is not controverted in the answer, and must therefore be taken as true, for the purpose of this action. (*Code*, § 168.) The proof given by the defendant is, however, in conflict with this allegation. The defendant testified that he purchased the wheat of A. W. Horton, and the bill of sale, bill of lading and draft for the payment would all seem to establish that statement. I think, from the evidence, that such must have been the fact. Horton would stand, upon this assumption, in the relation of vendor of this wheat to the defendant. I cannot see that this change of relation between Horton and the defendant changes the actual rights of the parties. The contract of sale was made at Buffalo. Nothing was paid at the time, and no title to the wheat passed till the delivery of it to the carrier. Upon the assumption that the carrier delivered to the defendant all the wheat he received of the vendor at Buffalo, it follows that the vendor did not deliver all the wheat purchased by the defendant. This was a question of fact, and was the question at issue and tried and submitted to the jury. The carrier was the agent of the consignee to receive the property, and if he accounted for all he received, to the defendant, the latter has a just claim for recovering back of Horton, the vendor, for the deficiency in the quantity of wheat, if he has paid for the whole quantity purchased.

Horton and Peck were the original parties, and Pettis, the carrier, was a mere intermediate man between them. If Horton had notice of the commencement and pendency of this action, he would be bound by the result, and the defendant might recover of him the amount mistakenly paid upon his draft for the purchase money of this wheat. Between Horton and Peck the case was and is open to all the equities between them as original vendor and vendee of this wheat, and their rights are not at all changed or affected by any thing done after its shipment. If the bill of lading had been transferred by Peck to a bona fide purchaser for a valuable consideration paid on the faith of it, Pettis, the captain of the canal boat, who signed the bill of lading, and any assignee of the freight from him, would be concluded by the bill, and would be estopped from showing any mistake in regard to the quantity shipped. (*Dickerson* v. *Seelye*, 12 *Barb.* 102.) But the defendant does not occupy the position of an assignee of the bill of lading for value. He was the original vendee and con-signee of the property. It is true he accepted a bill for the amount of the whole purchase, but he could not have done so on the faith of this particular bill of lading; for it did not embrace the whole quantity of wheat specified in the bill of sale, and it does not appear when the residue of the wheat was shipped by Horton or received by the defendant. But the rights of Peck, in any point of view, cannot be higher than they would have been had he actually paid for the whole quantity of 7494 bushels of wheat, at Buffalo, at the time of the purchase, before any of it was shipped. The wheat, it appears, was then probably in bulk in the elevator from which it was subsequently delivered to Pettis. In such case there would be, between the parties, simply a failure to deliver the whole quantity purchased, and the vendor would be bound to make up the deficiency. This view of the relation of the parties to each other disposes also of the other exceptions taken at the trial to the charge as given, and to the refusal of the judge to charge as requested. As the defendant was

not in a position to possess the rights of an assignee for value, but was really the principal or one of the principal parties in the transaction, the judge was right in the charge and refusal on this question. The case was properly submitted to the jury on the main issue of fact—the issue relating to the quantity of wheat actually received and delivered by the carrier—and they having found for the plaintiff on that issue, their verdict I think is conclusive and cannot be disturbed.

[MONROE GENERAL TERM, December 3, 1860. *Smith, Johnson* and *Knox,* Justices.]